```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

HINESBURG SAND & GRAVEL COMPANY,    :
INC.,                               :
                                    :
          Plaintiff,                :
                                    :
          v.                        :         2:95-cv-208
                                    :
CHITTENDEN SOLID WASTE DISTRICT,    :
WILLIAM LEACH, JOHN BARTLETT, JAMES :
CONDOS, DAVID EATON, THOMAS MOREAU, :
CONSTANCE PLUNKETT, CHARLES SCHWER, :
RICHARD VILLAMIL, ALBERT "SONNY"    :
AUDETTE, WILLIAM STAFFORD, RUTH     :
TAYLOR, ABRAHAM WALDSTEIN, FREDERIC :
MOODY, and ANTHONY BARBAGALLO,      :
                                    :
          Defendants.               :
```

**MEMORANDUM OPINION AND ORDER**

Defendants have moved for summary judgment on Plaintiff's remaining state law claim in Count III of its complaint.[1] In its Opinion and Order dated August 5, 2010, this Court retained supplemental jurisdiction over any remaining state law claims, and permitted Defendants to file a dispositive motion with respect to any remaining claims.

The facts pertaining to this motion were set forth in this Court's August 5 Opinion and Order, familiarity with which is presumed, and need not be repeated here. The facts are either undisputed or taken in the light most favorable to Plaintiff Hinesburg Sand & Gravel Company, Inc. ("HSG"), as the nonmoving

---

[1] HSG has abandoned its abuse of process claim, Count IV. Pl.'s Mem. in Opp'n 9, ECF No. 123.

party.

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine, dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

The moving party is entitled to summary judgment "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A court's role in deciding motions for summary judgment "'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.'" *Wilson*

*v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986)).

HSG's remaining equal protection claim was originally brought under Chapter I, Article 9 of the Vermont Constitution. *See* Complaint ¶ 43.  It now argues that its equal protection claim should be analyzed under Article 7's Common Benefits Clause.  The Defendants object, contending that HSG should have sought leave to amend its complaint to assert a new theory of recovery.  It is unnecessary to decide, however, whether HSG's complaint gave adequate notice to the Defendants of a state-law equal protection violation regardless of its source in the Vermont Constitution, because under either Article 9 or Article 7 HSG's claim does not survive summary judgment.

## I.  Article 9

Chapter I, Article 9 of the Vermont Constitution provides in relevant part:

> That every member of society hath a right to be protected in the enjoyment of life, liberty, and property, and therefore is bound to contribute the member's proportion towards the expence [sic] of that protection, and yield personal service, when necessary, or an equivalent thereto, but no part of any person's property can be justly taken, or applied to public uses, without the person's own consent, or that of the Representative Body, . . . nor are the people bound by any law but such as they have in like manner assented to, for their common good:  and previous to any law being made to raise a tax, the purpose for which it is to be raised ought to appear evident to the Legislature to be of more service to community than the money would be if not collected.

Vt. Const. ch. I, art. 9.  Article 9 "deals with the principle that taxes must be proportionately assessed."  *Clark v. City of Burlington*, 143 A. 677, 680 (Vt. 1928).  It is, first of all, not clear that HSG states a claim under Article 9.  The context of the Proportional Contribution Clause has traditionally been the classification of property for the purpose of taxation, or the power to exempt from taxation, or the validity of certain methods of taxation, or the evaluation of property for tax purposes.  *See, e.g.*, *L'Esperance v. Town of Charlotte*, 704 A.2d 760, 762 n.2 (Vt. 1997) (rejecting Article 9 claim that did not involve imposition of a tax or spending public funds); *Bookstaver v. Town of Westminster*, 300 A.2d 891, 897 (Vt. 1973) (requiring that methods of taxation operate equally upon persons taxed); *Vill. of Hardwick v. Town of Wolcott*, 127 A. 886, 888 (Vt. 1925) (approving taxation of a municipal electric plant); *In re Hickok's Estate*, 62 A. 724, 726 (1906) (upholding the imposition of inheritance taxes); *Colton v. City of Montpelier*, 45 A. 1039, 1040 (1899) (confirming the right to make exemptions from taxation).  *But see Fyles v. Schmidt*, 449 A.2d 962, 965 (Vt. 1982) (suggesting in dictum that plaintiffs' Article 9 claim challenging a district's refusal to assume ownership and maintenance of their sewer line corresponded to their federal equal protection claim).

Assuming without deciding that Article 9 applies outside the

taxation context, "the test of validity of governmental action under the proportional contribution clause must be the rational basis test used for federal equal protection analysis." *Alexander v. Town of Barton*, 565 A.2d 1294, 1299 (Vt. 1989); *accord USGen New England, Inc. v. Town of Rockingham*, 2003 VT 102, ¶ 15, 838 A.2d 927, 934.  As this Court has previously determined in this case, HSG has failed to establish that there was no rational basis for the District's treatment.  Op. & Order 17-18, ECF No. 114.  *See* USGen, 2003 VT 102, ¶ 26, 838 A.2d at 938 ("Under rational basis review, [plaintiff] has the burden of establishing that [the challenged action] cannot be reconciled with any conceivable state of facts that might lend it rationality.") (internal quotation marks omitted).

Given that HSG could not establish that the District's conduct violated the Equal Protection clause of the Fourteenth Amendment, it has failed to establish an Article 9 violation.

**II.  Article 7**

Chapter I, Article 7 of the Vermont Constitution provides in relevant part:  That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single person, family, or set of persons, who are a part only of that community . . . .  Vt. Const., ch. I, art. 7.  The Common Benefits Clause "is intended to insure that

the benefits and protections conferred by the state are for the common benefit of the community and are not for the advantage of persons who are a part only of that community." *Baker v. State*, 744 A.2d 864, 878 (Vt. 1999) (quotation marks omitted); *accord USGen New England*, 2003 VT 102, ¶ 28, 838 A.2d at 938.  It is "the first and primary safeguard of the rights and liberties of all Vermonters."  *Baker*, 744 A.2d at 871.

"Article 7 . . . require[s] a 'more stringent' reasonableness inquiry than . . . generally associated with rational basis review under the federal constitution."  *Id.*  Although a court will accord deference to "legislation having any reasonable relation to a legitimate public purpose," it must "engage in a meaningful, case-specific analysis to ensure that any exclusion from the general benefit and protection of the law would bear a just and reasonable relation to the legislative goals."  *Id.* at 872.

The first step in an Article 7 analysis is to "define that part of the community disadvantaged by the law."  *Id.* at 878.  Next is to discern "the government's purpose in drawing a classification that includes some members of the community within the scope of the challenged law but excludes others."  *Id.*  Last is to consider whether the classification "bears a reasonable and just relationship to legitimate state interests."  *Badgley v. Walton*, 2010 VT 68, ¶ 25, 10 A.3d 469, 477.

Assuming that HSG may bring an Article 7 claim against the allegedly discriminatory action of a municipal district,[2] it must first be able to show that it was treated differently from others who were similarly situated.  *See OMYA, Inc. v. Town of Middlebury*, 758 A.2d 777, 781 (Vt. 2000) (entry order); *Baker*, 744 A.2d at 880 n. 13; *State v. George*, 602 A.2d 953, 956 (Vt. 1991).  Using *Baker*'s language, HSG must show that it was "disadvantaged" with respect to other parts of the community.

As discussed at length in the August 5 Opinion and Order, HSG has no evidence that it was "disadvantaged" with respect to otherwise similarly situated landowners or otherwise similarly situated property.  Op. & Order 14-16.  In the absence of evidence that HSG and others were similarly situated, HSG cannot reach a jury on its claim of differential treatment for no reasonable and just governmental purpose.  Accordingly, the Defendants are entitled to summary judgment on HSG's Article 7 claim.

The Defendants' motion for summary judgment, ECF No. 119, is therefore **granted.**

**Case closed.**

---

[2] Although the *Baker* standard was articulated in the context of a statutory challenge, agency action pursuant to statute may give rise to an Article 7 claim.  *See OMYA, Inc. v. Town of Middlebury*, 758 A.2d 777, 781 (Vt. 2000) (entry order) (holding that an Act 250 permit condition imposed by the Environmental Board did not violate Article 7).

Dated at Burlington, Vermont this 11th day of February, 2011.

<u>/s/ William K. Sessions III</u>
William K. Sessions III
District Judge
